UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HESTER HOWELL, JR., | ) | CASE NO. 4:14CV44 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| WARDEN RICHLAND | ) | |
| CORRECTIONAL INSTITUTION, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |
| | ) | |

On January 8, 2014, Petitioner Hester Howell, Jr., ("Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations surrounding his 2010 convictions in Mahoning County Common Pleas Court for assault in violation of R.C. § 2903.13(A)(1)(2)(3), kidnapping in violation of R.C. § 2905.01(A)(3)(C), and a firearm specification in violation of R.C. § 2941.145(A).  ECF Dkt. #4-1 at 1.

On April 11, 2014, Respondent Warden Richland Correctional Institution[1] ("Respondent") filed a Return of Writ.  ECF Dkt. #4.  Petitioner filed a Traverse to the Return of Writ on May 7, 2014.  ECF Dkt. #8.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant habeas petition (ECF Dkt. #1) in its entirety with prejudice.

## I.    SYNOPSIS OF THE FACTS

The Seventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

---

[1]The undersigned notes that the current Warden of Richland Correctional Institution is Ms. Maggie Bradshaw.  The identity of Respondent has been maintained as Warden Richland Correctional Institution to properly reflect the docket and the briefs of the parties.

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 527 U.S. 1040 (1999).  As set forth by the Seventh District Court of Appeals, the facts are:

> [Petitioner] appeals from a Mahoning County Common Please Court judgment convicting him of assault and kidnapping, with an accompanying firearm specification, following a jury trial.

> In the evening hours of July 7, 2008, Edna Davis was at a barbeque on the south side of Youngstown with [Petitioner].  Davis and [Petitioner] had been involved with each other for approximately seven weeks.  The two left the barbeque together and walked to a house at 1823 Glenwood Avenue.  The house was owned by Debbie Garner but she did not live there.  Garner had hired [Petitioner] to do some maintenance work on the house.  Apparently, [Petitioner] stayed at the house on occasion.

> Davis and [Petitioner] argued on the way to the house.  Upon arriving at the house, [Petitioner] became abusive towards Davis.

> According to Davis, she attempted to leave but [Petitioner] threatened her life.  Davis stated that [Petitioner] pushed and hit her.  She stated that he punched her in the face, neck, and head.  One blow landed on her nose, which began gushing blood when she pushed it back into place. [Petitioner] ordered Davis to remove her clothes and use her clothes to clean up the blood on the floor. Davis complied.  Davis further stated that [Petitioner] threatened her with a gun and fired twice.  He then dropped the hot gun in her lap causing burns on her inner thighs. Davis stated that [Petitioner] also threatened her with a machete.

> After approximately three to four hours, Davis, still naked, was able to run out of the house.  She ran down Glenwood Avenue and jumped into a car that was driving on Glenwood.  The two girls in the car called 911 and drove Davis to Big A's convenience store where they waited for police to arrive.

> A Mahoning County Grand Jury subsequently indicted [Petitioner] on one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(3)(C); one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D); one count of attempted murder, a first-degree felony in violation of R.C. 2923.02(A) and R.C. 2903.02(A)(D); one count of domestic violence, a third-degree felony in violation of R.C. 2919.25(A)(D); and one count of having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(B).  The charges also carried firearm specifications.  The charges were bifurcated so that the having weapons under disability charge was not part of [Petitioner's] jury trial.

> The matter proceeded to a jury trial.  On [Petitioner's] motion, the trial court dismissed the domestic violence count.  The jury found [Petitioner] not guilty of attempted murder.  The jury found [Petitioner] not guilty of felonious assault, but found him guilty of the lesser included offense of assault.  It also found him guilty of kidnapping and of the accompanying firearm specification.

> [Petitioner] later entered a no contest plea to the charge of having weapons while under disability and the court found him guilty on this charge.

> The matter proceeded to sentencing where the court sentenced [Petitioner] to a total of seven years in prison.

-2-

ECF Dkt. #4-1 at 1.

## II.  PROCEDURAL HISTORY

### A.  State Trial Court

On April 16, 2010, Petitioner was found guilty by a panel of twelve jurors of assault in violation of R.C. § 2903.13(A)(1)(2)(3), a felony of the fifth degree, kidnapping in violation of R.C. § 2905.01(A)(3)(C), a felony of the first degree, and a firearm specification in violation of R.C. § 2941.145(A), a felony of the first degree.  ECF Dkt. #4-4 at 1.  On August 11, 2010, Petitioner entered a no contest plea to the charge of having weapons under a disability in violation of R.C. § 2923.13(A)(2)(B), a felony of the third degree.  *Id.* at 1-2.

The trial court then ordered that Petitioner serve a prison term of six months on the assault charge, four years on the kidnapping charge, three years on the firearm specification charge, and three years on the having a weapon under disability charge.  ECF Dkt. #4-4 at 2.  The trial court further ordered that the term of imprisonment for the firearm specification charge be served concurrently to the kidnapping charge, and that the assault, kidnapping, and having a weapon under disability charges be served concurrently to one another, but consecutively to the firearm specification charge.  *Id.*  Accordingly, Petitioner was sentenced to a total of seven years in prison.  *Id.*

### B.  Appeals to State Intermediate Court and Supreme Court of Ohio

On September 9, 2010, Petitioner, through counsel, filed a timely notice of appeal to the Seventh District Court of Appeals.  ECF Dkt. #4-1 at 1.  Petitioner asserted the following assignments of error:

ASSIGNMENT OF ERROR ONE

The prosecution failed to provide Crim. R.16 materials, failed to provide a witness list, violated *Brady v. Maryland*, denigrated opposing counsel and made inappropriate statements regarding inadmissible evidence and the credibility of witnesses.

ASSIGNMENT OF ERROR TWO

The manifest weight of the evidence supported acquittal.

ASSIGNMENT OF ERROR THREE

The trial court erred in permitting plain errors that affected [Petitioner's] substantial rights.

ASSIGNMENT OF ERROR FOUR

[Petitioner] was denied the effective assistance of counsel.

ECF Dkt. #4-1 at 2-9 (capitalization omitted).  On September 21, 2012, the Seventh District Court of Appeals overruled all four of Petitioner's assignments of error.  ECF Dkt. #4-1.

On October 29, 2012, Petitioner filed a pro se notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #4-15, #4-16.  Petitioner presented the following propositions of law:

PROPOSITION OF LAW ONE

(1) PROSECUTORIAL MISCONDUCT: The prosecution failed to provide Crim. R. 16 and material, failed to provide a list of witnesses under Loc.R.9 (B)(5), violated Brady v. Maryland, questioned the actions and motives of defense counsel, and made inappropriate statements to the jury concerning inadmissible evidence and the credibility of witnesses.

(2) Manifest Weight, Insufficient Evidence and Crim.R.29; The manifest weight of the evidence supported acquittal.

(3) Plain Error; The trial court erred in permitting plain errors that affected [Petitioner's] substantial rights. [sic]

ECF Dkt. #4-16 at 13-14.  The Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal on February 8, 2013.  ECF Dkt. #4-15, #4-17.

On November 15, 2012, while the above mentioned appeal was pending in the Supreme Court of Ohio, Petitioner filed a pro se application to reopen his direct appeal in the Seventh District Court of Appeals.  ECF Dkt. #4-18 (improperly labeled in the heading as "Eleventh District," rather than "Seventh District").  In this application, Petitioner presented two issues for review:

ISSUE FOR REVIEW ONE

The [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel on appeal when counsel failed to file a motion for reconsideration pursuant to Appellate Rule 26(A) after the Court's decision.

-4-

ISSUE FOR REVIEW TWO

The [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel on appeal when counsel failed to challenge the allied offenses of assault and kidnapping.

ECF Dkt. #4-18 at 4-5 (capitalization omitted).  The State filed its opposition to reopening on December 21, 2012.  ECF Dkt. #4-19.  On January 7, 2013, the Seventh District Court of Appeals denied Petitioner's application to reopen his direct appeal.  ECF Dkt. #4-20.

On February 4, 2013, Petitioner filed another pro se notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #4-21, #4-22.  Petitioner presented a sole proposition of law:

PROPOSITION OF LAW ONE

The [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel on appeal when counsel failed to challenge the allied offenses of assault and kidnapping.

ECF Dkt. #4-22 at 8.  The Supreme Court of Ohio again declined jurisdiction on March 27, 2013.  ECF Dkt. #4-21, #4-23.

## III.    28 U.S.C. § 2254 PETITION

On January 8, 2014, Petitioner filed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  In the petition, Petitioner raises the following grounds for relief:

GROUND ONE: State violated discovery obligations under Ohio Crim. Rule 16 denying [P]etitioner's Constitutional rights under the Due Process Clause under the 5th, and 14th Amendments to the U.S. Constitution

Supporting facts: The record demonstrates the state failed to provide the defense with a witness list of Debbie Garner, and failed to disclose previous complaints to police by the state's key witness, Edna Arlena Davis.

GROUND TWO: The State engaged in Prosecutorial Misconduct by improper questions and improper comments made during the closing statements to the jury.

Supporting facts: The state prosecutor engaged in misconduct during the trial proceedings during direct examination of witness and during closing statements to the jury.

GROUND THREE: The State Appellate and Trial Court's erred when it allowed the state to introduce and play the video of [P]etitioner's statements made to police when he requested an attorney in violation of the 5th, and 14th Amendment's to the U.S. Constitution.

Supporting facts: The record demonstrates that the state introduced [P]etitioner's statements made to police, and played a video of said statements to police even though [P]etitioner requested an attorney prior to making these statements.

> GROUND FOUR: Trial counsel rendered ineffective assistance of counsel when counsel failed to file a motion to suppress evidence of the gun seized from 1823 Glenwood Avenue in violation of the 4th, and 6th Amendment's to the U.S. Constitution.
>
> Supporting facts: Trial counsel failed to file a motion to suppress evidence seized from 1823 Glenwood Avenue.  The state appellate court's erred when the court's failed to recognize that evidence demonstrated the owner of said residence knew [P]etitioner was staying at the residence thus [P]etitioner had standing to contest the warrantless search and seizure of evidence. [sic]

ECF Dkt. #1 at 5-9.  On April 11, 2014, Respondent filed a Return of Writ.  ECF Dkt. #4.

Petitioner filed a Traverse to the Return of Writ on May 7, 2014.  ECF Dkt. #8.

## IV.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th

Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2ⁿᵈ Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6ᵗʰ Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6ᵗʰ Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6ᵗʰ Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6ᵗʰ Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or

-7-

that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

Petitioner has exhausted  all possible state remedies for his three claims.

### C.     Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

Petitioner has not procedurally defaulted on any of his claims.

### V.     STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997),

-8-

*cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.      Decisions of lower federal courts may not be considered.

B.      Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

      1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

      2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey,* 271 F.3d at 655-56 (6th Cir. 2001) (internal citations omitted).

-10-

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  ANALYSIS

### A.  Ground for Relief Number One

In his petition for a writ of habeas corpus, Petitioner's first ground for relief asserts:

> GROUND ONE: State violated discovery obligations under Ohio Crim. Rule 16 denying [P]etitioner's Constitutional rights under the Due Process Clause under the 5th, and 14th Amendments to the U.S. Constitution
>
> Supporting facts: The record demonstrates the state failed to provide the defense with a witness list of Debbie Garner, and failed to disclose previous complaints to police by the state's key witness, Edna Arlena Davis. [sic]

ECF Dkt. #1 at 5.  In his memorandum in support of his habeas petition, Petitioner claims that he

was denied a fair trial because the prosecutor failed to provide a copy of the witness list containing the name of Debbie Garner, the owner of the 1823 Glenwood Avenue property, and failed to disclose previous police complaints filed by Edna Davis.  ECF Dkt #1-1 at 4.

Petitioner first argues that the decision of the Seventh District Court of Appeals rejecting his claim of error was incorrect because, at the request of the defendant, the prosecutor shall provide a written list of the witnesses the prosecutor intended to call at trial.  ECF Dkt. #1-1 at 5. Petitioner cites *State v. Finnerty*, 45 Ohio St.3d 104, 543 N.E.2d 1233 (1989).  However, Petitioner fails to explain that *Finnerty* states that "it is evident from our prior holdings that failure to comply with a discovery request does not automatically result in exclusion of [the] testimony." *Id.* at 107.  Further, *Finnerty* explains that even if the prosecution fails to provide the defense with names of witnesses to be called in its case-in-chief, the trial court could properly admit the testimony in view of the fact that the prosecutor's mistake was inadvertent, the defense was not surprised by the testimony, and because defense counsel did not ask for a continuance. *Id.* (citing *State v. Edwards*, 49 Ohio St.2d 31, 42-43, 358 N.E.2d 1051, 1059-60 (1976)).

Respondent cites to the opinion of the Seventh District Court of Appeals, which clearly states:

> [Petitioner] objected at trial to Garner's testimony arguing that he never received a witness list with her name on it.  But, the prosecutor provided a "case cover sheet" to the court dated July 15, 2008, documenting that the state provided defense counsel with Garner's name, telephone number, and a synopsis of what her testimony would be.

ECF Dkt. #4 at 18 (citing ECF Dkt. #4-1 at 2).  In the instant case, the prosecutor's mistake in omitting Ms. Garner's name from the witness list appears to be inadvertent, and Petitioner fails to adequately argue otherwise.  Defense counsel should not have been surprised by the testimony because counsel was provided a synopsis of what Ms. Garner's testimony would be.  Finally, while Petitioner did object at trial to Ms. Garner's testimony, there was no request for a continuance.  Accordingly, Petitioner's argument as it relates to the test set forth in *Finnerty* fails.

-12-

Petitioner also relies on Ohio Crim. R. 16 insofar as prosecutorial violations of Crim. R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided in the accused's defense, and (3) the accused suffered prejudice.  *State v. Jackson*, 107 Ohio St.3d 53, 79, 2005-Ohio-5981, 836 N.E.2d 1173, 1203 (citing Ohio Crim. R. 16; *State v. Parrsion*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689, 691 (1983)).

This argument put forth by Petitioner also fails.  Petitioner fails to establish, or even provide any suggestive evidence, that the prosecutor's failure to disclose Ms. Garner's name on the witness list was willful.  Petitioner only argues that the disclosure of the information would have aided in his defense and that he suffered prejudice.  Even if the Court were to accept that disclosure of Mr Garner's name on the witness list prior to trial would have aided in Petitioner's defense, Petitioner has failed to indicate how he suffered prejudice beyond bald assertions that there was "no question" that failure to include Ms. Garner's name on the witness list prejudiced his defense.  ECF Dkt. #1-1 at 5-6.  It is only in the Traverse to the Return of Writ that Petitioner hints at how he could have benefitted from Ms. Garner's name being provided on the witness list, claiming that he could have proven that his residence was, in fact, 1823 Glenwood Avenue, and thus suppress the evidence obtained during the warrantless search of the premises (discussed at length at Ground Four, below).  ECF Dkt. #8 at 3.  However, Petitioner fails to demonstrate how he could accomplish proving this assertion, especially in the face of testimony evidence from Ms. Garner explicitly stating that Petitioner did not live in the residence, and the findings of the Seventh District Court of Appeals that Ms. Garner did not allow Petitioner to own, rent, or lease the home and that Petitioner has notice, in the form of a synopsis, of Ms. Garner's testimony. ECF Dkt. #4-1 at 2, 8.  Any error in failing to provide a witness list featuring Ms. Garner was harmless.

Petitioner next argues that the prosecutor's failure to disclose Ms. Davis' previous complaints to the police substantially denied him impeachment evidence that he was entitled to under *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667 (1985).

-13-

In both his Petition for a Writ of Habeas Corpus and Traverse to the Return of Writ, Petitioner bases his core argument on the fact that he only is required to show a reasonable probability that had the evidence been disclosed the results of the proceedings would have been different.  ECF Dkt #1-1 at 6-7, #8 at 8-9.  However, Petitioner does not make a showing of how there is a reasonable probability that the outcome of the trial would have been different had Ms. Davis' previous complaints to the police been provided to him by the prosecutor.  Not once does Petitioner indicate what he believes to be contained in Ms. Davis' previous complaints to police, or how the complaints could have been used to assist him in obtaining a different verdict.  In his Traverse to the Return of Writ, it appears that Petitioner also attempts to apply this argument to the exclusion of Ms. Garner's name from the witness list, however, as discussed above, Petitioner has made no showing of how he could have used the prior knowledge that Ms. Garner was testifying (assuming that he did not have an adequate synopsis, as found by the Seventh District Court of Appeals) to achieve a different outcome in his case.

In addition to the arguments on the merits, Respondent also contends that Petitioner had procedurally defaulted on his claim regarding the prosecutor's failure to provide copies of Ms. Davis' complaints.  ECF Dkt. #4 at 19-21.  A petitioner waives review of an alleged error where he fails to make a contemporaneous objection during the time of the alleged error.  *Osborne v. Ohio*, 495 U.S. 103, 124 (1990). Respondent cites the Seventh District Court of Appeals in support of the assertion that Petitioner violated Ohio's contemporaneous objection rule:

> [A]s to the state's failure to provide defense counsel with a copy of Davis's complaint, [Petitioner] failed to object in the trial court.  The failure to object to an alleged error waives review of all but plain error.

ECF Dkt. #4-1 at 2.  Accordingly, the Seventh District Court of Appeals proceeded with a review for plain error review.  *Id.*  (citing *State v. Krupa*, 7th Dist. No. 09-MA-135, 2010-Ohio-6268).  To prevail on a claim under plain error review, an appellant must demonstrate that the trial outcome would have been different but for the alleged error.  *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, 1046 (1996).  The adequate and independent state grounds doctrine requires that federal courts honor state holdings that are sufficient bases for state court

judgments, even where the state court also relies on federal law. *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255, 257 (198)).  Further, the Sixth Circuit has held that "by applying [the independent state grounds] doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for the decision." *Id.* at 867.

Petitioner contends that the Seventh District Court of Appeals never specifically stated that its ruling rejecting the instant claim was based on a procedural bar.  ECF Dkt. #8 at 7.  While the Seventh District Court of Appeals may not have explicitly stated that its ruling was on a procedural bar, it is clear that the court invoked the contemporaneous objection rule, and then employed a plain error standard in continuing with its analysis.  ECF Dkt. #4-1 at 2.  Petitioner also argues that the Supreme Court of Ohio was the last state court rendering a judgment in his case, and that nothing in that judgment stated that its judgment rested on a procedural bar.  ECF Dkt. #8 at 8.  Petitioner does not indicate that the Supreme Court of Ohio case that is cited is simply a notice that the appeal was not accepted for review, and thus the decision of the Seventh District Court of Appeals was withstanding.  *See State v. Howell*, 2013-Ohio-347, 782 N.E.2d 729.  Accordingly, Petitioner's first ground for relief insofar as it relates to Ms. Davis' complaints is procedurally barred, or, in the alternative and as discussed above, is without merit.

For the above reasons, the undersigned recommends that the Court find that Petitioner's first ground for relief is procedurally barred regarding disclosure of the prior complaints, and without merit regarding both the complaints and the witness list.

### B. Ground for Relief Number Two

Petitioner's second ground for relief asserts that:

GROUND TWO: The State engaged in Prosecutorial Misconduct by improper questions and improper comments made during the closing statements to the jury.

Supporting facts: The state prosecutor engaged in misconduct during the trial proceedings during direct examination of witnesses and during closing statements to the jury. [sic]

-15-

ECF Dkt. #1 at 7.  Petitioner contends that prosecutorial misconduct occurred when the prosecutor insinuated that defense counsel could have questioned the honesty or character of Ms. Davis, but chose not to do so, and when the prosecutor stated that no one testified that Ms. Davis was a dishonest person.  ECF Dkt. #1-1 at 8.  Further, Petitioner argued that the prosecutor made inappropriate statements to bolster Ms. Davis' credibility, and that the prosecutor engaged in misconduct when discussing the allegedly inadmissible video of Petitioner and statements made during the video that question his truthfulness.  *Id.* at 9.  Petitioner's assertions are discussed in greater detail in the opinion issued by the Seventh District Court of Appeals and need not be addressed again herein because Respondent correctly asserts that Petitioner procedurally defaulted on his second ground for relief.  *See* ECF Dkt. #4-1 at 2-3.

As with his claim regarding production of Davis' complaints to police, Petitioner failed to contemporaneously object to the alleged prosecutorial misconduct, and thus the Seventh District Court of Appeals reviewed Petitioner's arguments for plain error.  ECF Dkt. #4-1 at 3.  The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice.  *Williams v. Bagley,* 380 F.3d 932, 947 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005) ; *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Jalowiec v. Bradshow*, No. 1:03CV0645, 2008 WL 312655 *23 (N.D. Ohio Jan. 31, 2008); *Stojetz v. Ishee*, No. 2:04CV263, 2006 WL 328155 *12 (S.D. Ohio Feb. 10, 2006).

Petitioner has failed to argue or make any showing of cause for the waiver.  Petitioner argues that the actions of the prosecutor substantially infected the trial with unfairness as to make his conviction a denial of due process.  ECF Dkt. #8 at 10 (citing *Donelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  However, Petitioner fails to demonstrate how the comments made by the prosecutor rise to level to warrant the Court rejecting the ruling of the Seventh District Court of Appeals, especially when the ruling was made under a plain error standard of review.

In support of his allegations of prosecutorial misconduct, Petitioner cites several cases. First, Petitioner cites *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005), a death penalty case, which the

-16-

undersigned notes constitutes a setting in which "the question of error or effect is more complex than in traditional trials." *Bates,* 402 F.3d at 641.  In *Bates*, the prosecutor made the following statements:

> *If you, based on the law and facts of this case, choose not to execute the defendant, you have passively issued a warrant of execution for someone else... Where is the fundamental fairness in that, to let this man live and, in essence, to sentence someone else to die?  If he goes to the state penitentiary under a life sentence and he is permitted to be among the general population in the facility where he is going to be housed, by your actions you are voting life for him, you are voting for the death of someone else... Don't' let Bates be his executioner.*

*Id.* at 642 (emphasis original).  The above passage is just one of several examples cited in the *Bates* case.  Additionally in *Bates*, the prosecutor engaged in assertions of personal opinion or personal knowledge, and improper criticism of defense counsel's objections.  *Id.* at 644-47.

Further, in the other case offered as support for Petitioner's position, the prosecutor engaged in much more troubling conduct that in Petitioner's case.  In *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), the prosecutor: implied in closing arguments that the jurors should consider the defendant's unseemly character; explicitly urged the jurors to consider the defendant's character on rebuttal; attacked the defendant as a "self-serving, illogical selfish non-compassionate, no emotional interests in family type of person" who acted irrational due to "drugs and alcoholism and a general not caring about people;" and implored the jury to find that the crime "sure fit [the defendant]."  *Id*. at 699-700.  Further, the prosecutor in *Hofbauer* asserted that the story of a minor victim who was the alleged victim of defendant's sexual abuse had been consistent throughout the case and trial when there was no evidence on the record to support such an assertion.  *Id.*  at 700.

In the instant case, the alleged prosecutorial conduct, assuming it occurred as described, does not rise to the level necessary for Petitioner to be able to prove that the misconduct was prejudicial to his case.  This is especially true when Petitioner fails to show cause for the failure to object or resulting prejudice.  If the prosecutor in Petitioner's case did engage in any misconduct, that misconduct was harmless.

-17-

Accordingly, the undersigned recommends that the Court find that Petitioner's second ground for relief is procedurally defaulted, and, alternatively, without merit.

### C.        Ground for Relief Number Three

Petitioner's third ground for relief states:

> GROUND THREE: The State Appellate and Trial Court's erred when it allowed the state to introduce and play the video of [P]etitioner's statements made to police when he requested an attorney in violation of the 5th, and 14th Amendment's to the U.S. Constitution.
>
> Supporting facts: The record demonstrates that the state introduced [P]etitioner's statements made to police, and played a video of said statements to police even though [P]etitioner requested an attorney prior to making these statements. [sic]

ECF Dkt. #1 at 8.  Petitioner essentially argues that the Seventh District Court of Appeals erred by allowing the prosecution to play a video of statements he made to police after he had requested an attorney while being read his Miranda rights, and that this video evidence admitted against him was unduly prejudicial.  ECF Dkt. #1-1 at 13.

The Seventh District Court of Appeals sets forth the relevant facts, and these facts are binding on habeas review. *Warren*, 161 F.3d at 360-61.  The facts are as follows:

> During Lt. Kelty's testimony, the state played a video of the Lieutenant's interview of [Petitioner].  At the beginning of the interview, prior to asking [Petitioner] any questions, Lt. Kelty informed [Petitioner] that he would read [Petitioner] his Miranda rights.  Lt. Kelty then began to read [Petitioner] his rights. Part way through, [Petitioner] interrupted and asked, "Can I get a lawyer" and "you said I could get a lawyer."  Lt. Kelty told [Petitioner] to let him finish reading the Miranda rights.  Lt. Kelty then finished reading.  Next, [Petitioner] asked to read the Miranda rights himself.  Lt Kelty gave [Petitioner] a copy to read and the [Petitioner] signed an acknowledgment that he was given his rights. [Petitioner] did not request counsel again.  Instead he answered the lieutenant's questions.
>
> Even if Lt. Kelty should not have questioned [Petitioner], [Petitioner] cannot demonstrate prejudice. [Petitioner] did not say anything incriminating.  He simply denied being at 1823 Glenwood and argued with Lt. Kelty.  The interview was not a confession. [Petitioner] cannot demonstrate that if the court had not allowed the interview to be played for the jury, the result of the trial would have been different.

ECF Dkt. #4-1 at 8.

-18-

What is key in the factual findings is that no actual questioning began prior to Petitioner hearing his Miranda rights, Petitioner acknowledged that he received his Miranda rights, and then began answering Lt. Kelty's questions.  "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."  *Miranda v. Arizona*, 384 U.S. 436, 474 (1966).  Petitioner was not being questioned at the time that he made a request to speak to counsel.  Instead, the Lt. Kelly simply finished informing Petitioner of his rights, Petitioner then requested from Lt. Kelty a copy of his rights to review, reviewed his rights, did not again request an attorney, and then began answering questions.  Petitioner does not contend that he did not understand his rights.  Petitioner chose to, after hearing and reading his Miranda rights, speak to Lt. Kelty.  Petitioner's choices, namely his request to review his rights, acknowledge those rights, and then begin to answer questions, operated as a waiver of his right to remain silent and right to an attorney.

Petitioner also argues that the admission of the video was unduly prejudicial.  ECF Dkt. #1-1 at 14-17.  However, Petitioner fails to establish how the outcome of the trial would have been different had the video evidence not been admitted.  Petitioner does not make any substantial attempt to demonstrate that the trial outcome would have been different had the video not been admitted, but rather just repeatedly states that the video was highly prejudicial.  The Seventh District Court of Appeals did engage in a harmless error analysis, albeit a brief one, stating, "[Petitioner] cannot demonstrate that if the court had not allowed the interview to be played for the jury, the result of the trial would have been different."  ECF Dkt. #4-1 at 8.  Petitioner carries the burden of overcoming the presumption of correctness granted to the state appellate court by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner's general accusations that the outcome of the case would have been different had the video not been shown, without a clear and convincing showing of how the outcome would have been different, fails to defeat the presumption of correctness granted to the Seventh District Court of Appeals.

Accordingly, the undersigned recommends that the Court find that Petitioner's third ground for relief is without merit.

### D.    Ground for Relief Number Four

Petitioner's fourth ground for relief asserts that:

GROUND FOUR: Trial counsel rendered ineffective assistance of counsel when counsel failed to file a motion to suppress evidence of the gun seized from 1823 Glenwood Avenue in violation of the 4th, and 6th Amendment's to the U.S. Constitution.

Supporting facts: Trial counsel failed to file a motion to suppress evidence seized from 1823 Glenwood Avenue.  The state appellate court's erred when the court's failed to recognize that evidence demonstrated the owner of said residence knew [P]etitioner was staying at the residence thus [P]etitioner had standing to contest the warrantless search and seizure of evidence. [sic]

ECF Dkt. #1 at 10.  Petitioner claims ineffective assistance of counsel, asserting that his counsel should have filed a motion to suppress evidence found at 1823 Glenwood Avenue because Petitioner had a right to stay at the residence and thus standing to challenge the warrantless search of the residence.  ECF Dkt. #1-1 at 17-19.  Petitioner relies on the presumption that warrantless searches and seizures inside a person's residence are unreasonable.  ECF Dkt. #1-1 at 19 (citing *Payton v. New York*, 445 U.S. 573 (1980)).

Respondent argues that Petitioner's fourth ground for relief is procedurally defaulted because it was not presented to the Supreme Court of Ohio.  ECF Dkt. #4 at 32.  Petitioner contends that he did raise the issue in an appeal to the Supreme Court of Ohio.  ECF Dkt. #8 at 14-15.  While Petitioner did not expressly state this ground for relief in his appeal to the Supreme Court of Ohio, he did raise the issue in his October 24, 2012 notice of appeal.  ECF Dkt. #4-16 at 10-11.  However, the Court need not determine whether Petitioner did in fact procedurally default on his fourth ground for relief because the ground for relief is without merit.

In support of his contention that he lived at the 1823 Glenwood Avenue residence, Petitioner cites several passages of the transcript.  First, Petitioner cites Ms. Davis' testimony indicating that she helped Petitioner move into the residence.  ECF Dkt. #4-7 at 758.  Second, Petitioner indicates that Lt. Kelty's testimony stated that he spoke with Ms. Garner and that she told Lt. Kelty that Petitioner was living at the residence while doing repair work.  *Id.* at 256.  Petitioner also asserts that the police report lists his residence as 1823 Glenwood Avenue,

-20-

however it appears that it was Ms. Davis' statement that was referenced on the police report, rather than the statement of the officers.  ECF Dkt. #8-2.

Standing alone, it may appear that Petitioner is correct in his assertion that he lived at 1823 Glenwood Avenue, however, the overwhelming evidence on the record indicates that his assertion is not correct.  Capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place.  *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  "A subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as reasonable.'"  *Id.* (quoting *Katz v. United States,* 389 U.S. 347, 361 (1967)).

Ms. Davis' statement indicating that Petitioner lived in the residence is fallible.  There is no indication that Petitioner did not simply tell Ms. Davis that he lived in the residence, or that Ms. Davis ever spoke with Ms. Garner regarding whether Petitioner lived in the residence.  The testimony of Lt. Kelty, that he spoke with Ms. Garner and she stated that Petitioner lived in the residence, is undermined by the police report, which states that Lt. Kelty spoke with "the home owner of [redacted], phone number [redacted], who stated that the home was vacant at the time of the incident and the suspect Howell was hired to do repairs on the home."  ECF Dkt. #8-2 at 2. This suggests that Ms. Garner never actually stated that Petitioner lived at the residence, as relied upon by Petitioner.  Further, as described above, the police report simply indicated that Ms. Davis stated that Petitioner lived in the residence.  *Id.* at 1.

Most telling of all is the testimony given by Ms. Garner herself.  Ms. Garner explicitly states that Petitioner did not stay at the house or live in the house, and if he did, it was without her knowledge.  ECF Dkt. #4-7 at 199.  Ms. Garner stated that she contacted Petitioner daily at his mother's house before 9:00 a.m., and to her knowledge he never stayed overnight at the 1823 Glenwood Avenue residence.  *Id.* at 201-02.  Repeated assertions of this nature are made over the course of a number of questions posed to Ms. Garner.  *Id.* at 199-203.  Petitioner did not have a legitimate expectation of privacy at the residence.  For the above reasons, Petitioner has failed to show that the Seventh District Court of Appeals' determination that he did not live at 1823

Glenwood Avenue was unreasonable.

Accordingly, the undersigned recommends that the Court find that Petitioner's fourth ground for relief is without merit.

## VII.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant habeas petition (ECF Dkt. #1) in its entirety with prejudice.


DATE:   September 18, 2015                     */s/ George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).